Alan Thomas James and Donna James v. Commissioner. Joseph Hrecz v. Commissioner.
James v. Commissioner
Docket Nos. 93691, 93715.
United States Tax Court
T.C. Memo 1964-49; 1964 Tax Ct. Memo LEXIS 288; 23 T.C.M. (CCH) 385; T.C.M. (RIA) 64049; February 28, 1964
*288 Held, that a portion of amounts expended by two elementary and high school music and band instructors on an organized music and cultural tour in Europe are deductible under section 162(a) of the 1954 Code as ordinary and necessary expenses incurred in maintaining and improving their skills in their respective employments. Marvin R. Adams, and Peter W. Janss, 212 Equitable Bldg., Des Moines, Iowa, for the petitioners. James T. Finlen, Jr., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined deficiencies in income taxes for the year 1959, in the amounts of $226.08 against petitioners Alan Thomas and Donna James, and of $191.06 against petitioner Joseph Hrecz. The cases were consolidated *289 for trial. The sole issue for decision is whether a portion of the amounts expended by two elementary and high school music and band instructors on an organized music and cultural tour in Europe are deductible under section 162(a) of the 1954 Code, as ordinary and necessary expenses of maintaining and improving their skills used in their respective employments. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and all exhibits identified therein are incorporated herein by reference. Petitioners Alan Thomas James and Donna James are husband and wife who resided in Monona, Iowa. They filed a joint income tax return for the taxable year involved with the district director of internal revenue for the district of Iowa. The wife Donna is involved herein only because of the filing of the joint return. Petitioner Joseph Hrecz was, during the year involved, an unmarried person who resided in Garnavillo, Iowa. He filed an individual income tax return for said year with the district director of internal revenue for the district of Iowa. Petitioner Alan Thomas James (herein called "James") was graduated from the University of Dubuque in 1952, receiving *290 a Bachelor's Degree in Music Education. Also prior to June 1959, he had completed 8 hours of graduate study toward a Master of Arts Degree. He held a teacher's life certificate issued by the State of Iowa, which entitled him to teach music and English in the schools of that state. Since July 1955, he has been employed as a teacher in the Community School located in Monona, Iowa; and during the period here involved, he was employed on a 12-month basis by said school under a contract to act as head of the music department and director of the school bands. As part of said work, he directed a senior band composed of about 175 high school students, directed a junior band composed of about 50 students in the lower grades; gave private music and band lessons to a substantial number of students during school hours; and also conducted band concerts in the city - all as an employee of the school. Petitioner Joseph Hercz graduated from Youngstown University in 1953 and received a Bachelor's Degree in Music with a major in music education. He held a professional teaching certificate from the State of Iowa, which entitled him to teach among other subjects, band and instrumental music. Since about *291 1954 he had been employed by the Community School located in Garnavillo, Iowa, as an instructor of band and instrumental music; and during the taxable year involved, he was under a contract with said school which covered the school years 1958-1959 and 1959-1960. During the spring of the taxable year 1959, James was invited by a telegram from Erling Hanson, the band director of the high school in Manchester, Iowa, to participate as a member of a special delegation of band directors and music instructors on a 22-day tour in Europe and the Soviet Union. The telegram stated that the tour was being arranged in conjunction with the United States State Department Cultural Visitation Exchange Program. Hanson was to be the leader of the tour which was to be operated by Maupintour Associates of Lawrence, Kansas; and the members of the tour were to be principally music and band instructors from schools in Iowa and Illinois. The tour program provided for interviews with persons engaged in music education in various European countries, visits to colleges and schools in which music was taught, and opportunities to attend operas and listen to orchestras in the various countries to be visited. The *292 telegram also suggested that James bring the invitation to the attention of the school board of the district in which he was employed, for its consideration as to whether it might send him as a delegate from that district. James, after receiving said invitation, discussed the same with the superintendent of the Monona Community School District. The latter regarded the project to be meritorious and "something which too few teachers do." Thereafter the school board granted James leave of absence on full pay for the period that he would be absent on the tour; and also it employed a substitute instructor for that period, at its own expense. Thereupon, James made arrangements to join the tour; and petitioner Hrecz, who as before stated was the instructor of band and instrumental music at the Garnavillo Community Schools, also made arrangements to participate in the tour. The tour group assembled in New York City on June 5, 1959. There were 13 participants, all but one of whom were school band or music instructors, and the other one was employed in the musical field. No wife of any participant accompanied him. The group first met with the United States Government Affairs Commission *293 at its office near the United Nations headquarters, where the group received instructions regarding their traveling, particularly in the Soviet Union. The group then left by airplane for England. From there they continued to Stockholm, Sweden; to Helsinki, Finland; to Leningrad and Moscow in the U.S.S.R.; to Prague, Czechoslovakia; and then to Paris, France, before returning to the United States. Among the places they visited on the trip were the following: In England, they visited Stratford-on-Avon and other historical or public places; the Guildhall School of Music and Drama, where they interviewed the principal of the school; and the Neller Hall of Music where army bandsmen are trained, and where they interviewed the Commandant of the school and were permitted to observe the band members individually during a rehearsal. In Sweden, they attended an opera; visited a Swedish high school; visited the United States Embassy, where they met with the press, the Cultural attache, and the Cultural Affairs officer; and they also visited the Royal Academy Conservatory, and Drottingholm Palace. In Helsinki, they visited the Sibelius Conservatory where they heard a concert and interviewed *294 the director of the Conservatory. And during one evening, James and Hrecz also attended a concert by an outstanding Russian violinist. In Leningrad, they visited several palaces, cathedrals, and other public buildings; visited the graves of renowned Russian composers; attended an opera; and also visited the House of Composers, where they were given copies of children's folk music and were permitted to talk with some of the composers. In Moscow, they attended several operas; visited the University of Moscow and other public buildings; met the Cultural attache and the Cultural counselor at the United States Embassy; visited the Tchaikovsky Conservatory, where they interviewed the Dean regarding the Russian system of music education, and heard a rehearsal of the Soviet State Orchestra; and visited Tchaikovsky's former home, where they saw the original manuscript of one of his symphonies and the piano which he had used. In Prague, they visited among other things, the National Museum of Musical Instruments; the former homes of Mozart and Beethoven; and the Smetena Museum dedicated to music and items of music. In Paris, they visited various public and historical buildings; the Music *295 Conservatory, where they heard young pianists perform; and also visited a large band instrument factory. During spare times, the members of the group did sight-seeing; and James and Hrecz, before returning to the United States, took a 6-day trip into Germany at their own expense. After returning to their respective employments, James and Hrecz had occasion to describe what they had observed on the tour, and to employ in their classes many of the musical techniques they had learned. James and Hrecz each paid $1,413 to Maupintour Associates as the basic cost of the tour - which amount was exclusive of their expenses on the 6-day trip into Germany. Each of them claimed as a deduction on his income tax return for the taxable year involved, 80 percent of said basic charge for the tour (being $1,130) as an expense for maintaining and improving his skills in his employment as a band and music instructor. The Commissioner, in his notices of deficiency herein, disallowed such claimed deduction to each petitioner. Opinion Section 162(a) of the 1954 Code provides, so far as here material, that There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred *296 during the taxable year in carrying on any trade or business, * * * And section 1.162-5 of the Income Tax Regulations, which deals particularly with expenses for education, provides in material part: (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, * * * The question here presented for decision is, whether the musical and cultural tour in Europe in which the petitioners James and Hrecz were participants, was (in the words of the above Income Tax Regulations) "undertaken primarily for the purpose of * * * maintaining or improving skills" required by them in their respective employments as music and band instructors - so as to entitle each of them to a deduction in an amount equal to 80 percent of the basic charge which he paid for the tour. Questions of this character must be decided on the basis of each particular case; and in our opinion, the question in the instant cases should be answered in the affirmative. In our foregoing *297 Findings of Fact, we have reviewed in considerable detail much of the itinerary for the tour; and although we have not attempted to set forth all the places that were visited, we deem it sufficient to state that, after considering and weighing all the evidence (including all testimony and all exhibits of record) we are convinced that the tour was participated in by James and Hrecz, and the expenditures of the tour were incurred by them "primarily for the purpose of * * * maintaining or improving skills" required by them in their respective employments. As we have heretofore found as facts, the group tour was arranged in conjunction with the United States State Department Cultural Visitation Exchange Program; at least in the case of James, the school by which he was employed made official and advantageous arrangements for a leave of absence with pay, so that he might participate; all members of the tour group were persons engaged in musical endeavor; the tour was both designed and conducted in such manner as to give emphasis to music and to the historic background for music; and James and Hrecz, upon returning to their employments, found that their observations and the techniques which *298 they had obtained on the trip were beneficial and useful to them in their music and band work. James and Hrecz have frankly conceded that during the trip, they did do some sight-seeing - which might reasonably be expected in the circumstances; and, recognizing that this was personal in character, they made claim on their respective income tax returns to a deduction for only 80 percent of the basic tour charge, and made no claim to any deduction for the expenses which they incurred during their 6-day personal trip into Germany after the group itinerary had been completed. We regard this allocation of expenses to be reasonable and fair; and accordingly we approve the same. Based on all the foregoing, we decide the issue in each case in favor of the petitioner. Decisions will be entered for the petitioners.